**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

LIANA M. O.,

      Plaintiff,

v.                                                                  Civ. No. 2:24-cv-00338-KRS

FRANK BISIGNANO,[1] *Acting Commissioner*
*of the Social Security Administration*,

      Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court upon Plaintiff Liana M. O.'s ("Plaintiff") Brief and

Memorandum of Law in Support of Reversing or Remanding an Administrative Agency Decision,

(Doc. 11), dated August 22, 2024, challenging the determination of the Commissioner of the Social

Security Administration ("SSA") that she is not entitled to disability benefits under Title II and

Title XVI of the Social Security Act, 42 U.S.C. §§ 401-34, 1381-83f. The Commissioner

responded to Plaintiff's Motion on September 20, 2024, (Doc. 13), Plaintiff filed a reply brief on

October 4, 2024, (Doc. 14). With the consent of the parties to conduct dispositive proceedings in

this matter, *see* 28 U.S.C. § 636(c); FED. R. CIV. P. 73(b), the Court has considered the parties'

filings and has thoroughly reviewed the administrative record. Having done so, the Court

concludes that the Administrative Law Judge did not err in his decision and will therefore **DENY**

Plaintiff's Motion and **AFFIRM** the judgment of the Commissioner.

## I.    PROCEDURAL POSTURE

On April 15, 2020, Plaintiff filed an application for disability insurance benefits ("DIB")

---

[1] Frank Bisignano became the Acting Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted for Leland Dudek as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

and an application for supplemental security income ("SSI").[2] (*See* Administrative Record ("AR") at 65, 68-70). In both applications, Plaintiff alleged disability beginning on December 18, 2019, due to anxiety, type 1 bipolar disorder, post-traumatic stress disorder ("PTSD"), type 2 diabetes, and low blood pressure. (*Id.* at 73, 85). Plaintiff's applications were denied at the initial level on September 24, 2020, (*id.* at 144-49), and at the reconsideration level on February 4, 2021, (*id.* at 160-69). Plaintiff requested a hearing (*id.* at 170-71), which ALJ Gordan Momcilovic (the "ALJ" or "ALJ Momcilovic") conducted telephonically on September 14, 2021 (*id.* at 39-60). Plaintiff was represented by counsel and testified at the hearing, as did vocational expert Wallace Stanfill. (*Id.*).

On October 4, 2021, the ALJ issued an unfavorable decision. (*Id.* at 13-31). The Appeals Council denied review on March 4, 2022, (*id.* at 2-7), and Plaintiff subsequently filed suit in this Court on April 28, 2022. (*Id.* at 1032-33; 2:22-cv-00322-KRS). On January 31, 2022, this Court entered an Order remanding to the administration for further proceedings. (AR at 1040-51).

On March 6, 2022, the Appeals Council issued an Order remanding the matter to ALJ Momcilovic. (*Id.* at 1055). On January 9, 2024, the ALJ conducted a second disability hearing, (*id.* at 968-1000), wherein Plaintiff amended her claim to the closed period of December 18, 2019, through September 22, 2022, with consideration of an extended period of eligibility starting December 2023. (*Id.* at 974-76; *see also id.* at 930). On February 8, 2024, the ALJ issued a second unfavorable decision finding Plaintiff not disabled from the alleged onset date of December 18, 2019, through the date of the decision. (*Id.* at 927-67). On April 9, 2024, Plaintiff bypassed the Appeals Council and filed the Complaint in this case seeking review of the Commissioner's

---

[2] Document 8 is the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

decision. (Doc. 1).

## II.    LEGAL STANDARDS

### A.    Standard of Review

Judicial review of the Commissioner's decision is limited to determining "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) (citing *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)); *see also* 42 U.S.C. § 405(g). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *See, e.g.*, *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Although a court must meticulously review the entire record, it "may neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]." *See, e.g.*, *id.* (quotation omitted).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted); *Langley*, 373 F.3d at 1118 (quotation omitted). Although this threshold is "not high," evidence is not substantial if it is "a mere scintilla," *Biestek*, 139 S. Ct. at 1154 (quotation omitted); "if it is overwhelmed by other evidence in the record[,]" *Langley*, 373 F.3d at 1118 (quotation omitted); or if it "constitutes mere conclusion[,]" *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005) (quotation omitted). Thus, the Court must examine the record as a whole, "including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan*, 399 F.3d at 1262 (citation omitted). While an ALJ need not discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence," *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (citation omitted),

and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." *Id.* at 1010 (quotation omitted). "Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quotation and citation omitted).

### B.    Disability Framework

"Disability," as defined by the Social Security Act, is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *Wall v. Astrue*, 561 F.3d 1048, 1051-52 (10th Cir. 2009); 20 C.F.R. §§ 404.1520, 416.920. If a finding of disability or non-disability is directed at any point, the SSA will not proceed through the remaining steps. *Thomas*, 540 U.S. at 24. At the first three steps, the ALJ considers the claimant's current work activity and the severity of the claimant's impairment or combination of impairments. *See id.* at 24-25. If no finding is directed after the third step, the Commissioner must determine the claimant's residual functional capacity ("RFC"), or the most that the claimant is able to do despite his or her limitations. *See* 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). At step four, the claimant must prove that, based on the claimant's RFC, the claimant is unable to perform the work he or she has done in the past. *See Thomas*, 540 U.S. at 25. If the claimant meets "the burden of establishing a prima facie case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that" the claimant retains sufficient RFC "to perform work in the national economy, given his age, education

and work experience." *Grogan*, 399 F.3d at 1261 (citation omitted); *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

## III.    THE ALJ'S DETERMINATION

ALJ Momcilovic reviewed Plaintiff's claims pursuant to the five-step sequential evaluation process. (AR at 933-58). First, the ALJ determined that Plaintiff met the insured status requirements through September 30, 2025. (*Id.* at 933). He further concluded Plaintiff had engaged in substantial gainful activity ("SGA") from September 2022 to the present, but she had a continuous 12-month period wherein she did not engage in SGA. (*Id.*) Notably, Plaintiff was working in the fourth quarter of 2023, and was working at the time of her January 2024, disability hearing. (*Id.* at 975-76, 980-82). At step two, the ALJ found Plaintiff had "the following severe impairments: generalized anxiety disorder and panic disorder with agoraphobia, post-traumatic stress disorder, attention deficit hyperactive disorder, bipolar I disorder with depression, and cluster B personality disorder. (*Id.* at 933). The ALJ also found that Plaintiff's type II diabetes, obesity, mild degenerative disease of the lumbar spine, hypertension, hypercalcemia, and COVID-19 viral infection with no residual effects were non-severe impairments. (*Id.* at 934-35). At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met the criteria of listed impairments under Appendix 1 of the SSA's regulations. (*Id.* at 935). ALJ Momcilovic also found Plaintiff's mental impairments, considered singly and in combination, did not meet or medically equal the criteria of the listings. (*Id.*)

Moving to the next step, the ALJ concluded that Plaintiff had the RFC "to perform a full range of work at all exertional levels but with the following non-exertional limitations: occasionally interact with the public. She can understand, remember, and carry out detailed but

not complex job instructions and work-related tasks." (*Id.* at 937). In determining Plaintiff's RFC, the ALJ extensively reviewed the evidence of record, including medical opinions and evidence from treating and consulting providers, prior administrative medical findings, and Plaintiff's own subjective symptom evidence. (*See id.* at 937-56).

On September 14, 2021, at her initial disability hearing, Plaintiff stated she could not perform a job entailing "only easy tasks" due to her poor concentration, difficulty remaining on task, and getting nervous around people. (*Id.* at 938 (citing Testimony (AR 39-60))). Plaintiff also testified that her daily activities were limited in that she avoids going out of her house alone, she does not go to the movies, restaurants, church, nor does she visit with people. (*Id.* (citing Testimony)). On January 1, 2024, at her second disability hearing, Plaintiff testified she suffered from anxiety and depression. (*Id.* at 939 (citing Testimony (AR 968-1000))). Plaintiff also testified that she struggled to leave the house, get ready for the day, and she avoided friends and family. (*Id.*) She further stated she was not productive or organized, she was no longer reading, and even preparing a meal made her anxious. (*Id.*) Prior to returning to work, Plaintiff testified she struggled controlling her emotions and was frequently crying. (*Id.* at 940). She was also anxious at her job because a co-worker who helped her with organization and lesson plans had left the school. (*Id.* at 939).

Similarly, in the May 28, 2020, Adult Function Report, Plaintiff claimed she was limited due to issues focusing, concentrating, and becoming nervous when given a task. (*Id.* at 940 (citing AR at 312)). She was also uncomfortable around people, crowds, and lived alone. (*Id.*) She struggled with daily decisions and personal care such as selecting clothing. (*Id.*) It was difficult for her to socialize because she lacked patience. (*Id.* at 940 (citing AR at 316)). She also struggled with demanding authoritative figures. (*Id.* at 940 (citing AR at 317)). In the December 21, 2020,

Adult Function Report, Plaintiff stated she was paranoid in public because of her anxiety and PTSD. (*Id.* at 940 (citing AR at 356)). She sometimes was unable to get along with others and suffered from insomnia and mania. (*Id.*) Plaintiff did not get along well with authoritative figures if she was experiencing a manic episode. (*Id.* at 940 (citing AR at 362)). Plaintiff lacked motivation to get dressed and perform personal self-care such as bathing and washing her hair. (*Id.* at 940 (citing AR at 357)).

Plaintiff's psychiatric-mental health nurse practitioner Margaret Wood, PMHNP-BC, ("NP Wood"), treated Plaintiff from January 20, 2021, to September 27, 2023. (AR at 1267-1309; *see also generally* 1310-2337). NP Wood opined Plaintiff was "seriously limited, but not precluded" in unskilled, semi-skilled, and skilled work as follows:

- Remember work-like procedures;
- Carry out very short and simple instructions;
- Maintain attention for two hour segment;
- Work in coordination with or proximity to others without being unduly distracted;
- Complete a normal workday and workweek without interruptions from psychologically based symptoms;
- Perform at a consistent pace without an unreasonable number and length of rest periods;
- Get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes;
- Respond appropriately to changes in a routine work setting;
- Deal with normal work stress; and
- Interact appropriately with the public.

(AR at 2556). NP Wood further opined Plaintiff was "unable to meet competitive standards" in unskilled, semi-skilled, and skilled work as follows:

- Remember work-like procedures;
- Maintain attention for two hour segment;
- Perform at a consistent pace without an unreasonable number and length of rest periods; and
- Use public transportation.

(*Id.*) NP Wood further opined Plaintiff was limited because she could not work or drive on her medication; and:

Without therapy, medication, the FMLA paperwork, and her adhering to a strict low key schedule[,] this patient would be back where she was prior to 2022 when she was not able to work. She still has good and bad days, but she's able to leave on the bad days if necessary. She is triggered by a lot, so her anxiety is almost always on the tipping point. For this reason she has to slow down and at times stop so she can adjust and restabilize. She's not[,] and may never be[,] fully recovered, and could destabilize at any time.

(AR at 2554-55).

In assessing the evidence of record, the ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause some of her alleged symptoms. (*Id.* at 941). He held, however, that Plaintiff's statements about the "intensity, persistence, and limiting effects" of her symptoms were "not entirely consistent" with the medical evidence and other evidence in the record. (*Id.*)

The medical record shows Plaintiff reported psychological symptoms from her mental impairments. Despite these reports, however, Plaintiff's examinations generally painted a different picture. Specifically, ALJ Momcilovic made the following findings:

- Treatment records established Plaintiff had a history of nonadherence to medication and, in March 2020, she was not on any psychiatric medication during her psychiatric hospitalization. (*Id.* at 938-39 (citing Testimony; AR at 587, 594); AR at 941 (citing AR at 587-88, 593-94)). Plaintiff's symptoms, however, improved once she started taking medications. (*Id.* at 941 (citing AR at 588));

- From December 2019 to April 2022, Plaintiff saw therapist Brenda Abercrombie, LPCC, ("Abercrombie"). Abercrombie remarked Plaintiff was not taking psychiatric medication from December 2019 to March 2020. (*Id.* at 941 (citing AR at 631-32); AR at 938-39 (citing Testimony; AR at 587, 594); AR at 941 (citing AR at 587-88, 593-94)). Plaintiff's mental status examinations ("MSE") were unremarkable from January 2020 to April 2022. (*Id.* at 941 (citing

AR at 632, 634); AR at 942 (citing AR at 640, 648, 653, 657)). Further, her MSEs demonstrated normal attention span, concentration, insight and judgment. (*Id.* at 941 (citing AR at 634)). Plaintiff also repeatedly denied psychosis, hallucinations, or suicidal ideation during her extensive treatment with Abercrombie. (AR at 942 (citing AR at 640, 657)). Abercrombie also noted that Plaintiff was "fully oriented," "mellow," "focused," "calm," "motivated," and her moods were generally stable, (AR at 941 (citing AR at 632, 634, 610-11; AR at 942 (citing AR at 640, 648)), even though Plaintiff was sometimes anxious, "somewhat anxious," in a "somewhat dysthymic" mood, and/or depressed mood. (AR at 941 (citing AR at 634, 610-11); AR at 942 (citing AR at 648, 653, 657)). Plaintiff recognized she needed to maintain her psychiatric medications in order to maintain stability. (AR at 941 (citing AR at 634); AR at 942 (citing AR at 646-47)). In June 2021, Plaintiff told Abercrombie that she "no longer noticed her anxiety once she started the process of moving in [to the new home she purchased], which she attributed to directing her energy towards a purposeful goal." (*Id.* at 943 (citing AR at 723));

- From January 2021 to September 2023, NP Wood noted Plaintiff's MSEs were unremarkable and showed she "exhibited euthymic mood with pleasant affect," she was cooperative, calm, and speech was normal. (*Id.* at 942-43 (citing AR at 769 (July 2021), 775 (May 2021), 781 (April 2021), 786 (February 2021), 790 (January 2021)); AR at 944 (citing AR at 1290 (November 2022), 1291 (August 2022), 1293 (July 2022), 2060 (October 2021), 1296 (June 2022)); AR at 945 (citing 1281 (June 2023), 1283 (April 2023), 1285 (March 2023)). Plaintiff was also alert and demonstrated fully oriented cognition with intact memory and though processes, judgment, and insight. (AR at 942-43 (citing AR at 786 (February 2021), 790 (January 2021)). Plaintiff repeatedly denied anxiety and depression symptoms as well as paranoia, hallucinations, delusions, and/or bipolar symptoms. (AR at 943 (citing AR at 781) (April 2021); AR at 944 (citing

AR at 1293) (July 2022); AR at 945 (citing AR at 1281) (June 2023)). And, when Plaintiff cited heightened anxiety and depression in April 2022, her MSE was normal. (AR at 944 (citing AR at 1299-1300)). In July 2022, Plaintiff reported she was no longer in counseling. (*Id.* (citing AR at 1293)). Throughout her treatment, Plaintiff endorsed depression and anxiety symptoms at low severity levels: anxiety and depression one out of ten, (AR at 942 (citing AR at 790) (January 2021)); anxiety four out of ten and depression two out of ten, (AR at 943 (citing AR at 769) (July 2021)); improved by 60% although she rated her anxiety as a six out of ten, (AR at 944 (citing AR at 2059) (October 2021)); depression four out of 10 and anxiety 5-6 out of ten, (AR at 1299) (April 2022); and anxiety one of ten, (AR at 945 (citing AR at 1281) (June 2023)). Plaintiff also reported she was "doing alright from a psychiatric standpoint," (AR at 943 (citing AR at 781) (April 2021)), "doing okay," (AR at 943 (citing AR at 775) (May 2021)), and doing well and learning healthy boundaries, (AR at 944 (citing AR at 1296) (June 2022));

- Plaintiff also made the following statements in her May 28, 2020, Adult Function Report: (1) Plaintiff prepared and ate three meals a day, (AR at 940 (citing AR at 312)); (2) once a week and every other weekend she cooked for her teenage sons, (*id.*); (3) she could do the laundry, housework, and "one to two errands, such as paying bills or grocery shopping," (*id.*); (4) she was able to manage her medications, drive, and although she did not like to go out alone she was able to grocery shop twice a week, (AR at 940 (citing AR at 313-14)); (5) Plaintiff could manage her own finances, she was reading again, she was spending time with others, and she was able to attend doctor appointments without reminders, (*id.* (citing AR at 314-16)); and (6) she could follow written instructions, (*id.* (citing AR at 316));

- In her December 21, 2020, Adult Function Report, Plaintiff stated she: (1) typically washed dishes, prepared meals, completed housework around her trailer, did the laundry, read,

paid bills, and ran errands, (AR at 940 (citing AR at 357-58)); (2) was able to manage her medication, shop in stores for groceries, manage her finances, and socialize in person with family, friends, and neighbors even though she generally kept to herself, (*id.* (citing AR at 359-60)); and (3) could follow written instructions, (*id.* (citing AR at 361));

• In August 2021, Claudia Enriquez, APRN, FNP-C, ("APRN Enriquez"), noted that Plaintiff told her that she was not nervous or depressed, and she was feeling better. (AR at 944 (citing AR at 809-10 (August 2021), 815 (July 2021), 819 (June 2021), 827 (June 2021)));

• In September 2023, Plaintiff self-reported stress, anxiety on a scale of ten out of ten, and depression on a scale of 2-4 out of ten caused by work. (AR at 945 (citing AR at 1275)). Yet, Plaintiff's MSE demonstrated normal speech, logical thought processes, normal thought content and fund of knowledge, and she was oriented despite her anxious mood. (*Id.*). And, although NP Wood advised her to complete FMLA paperwork in case she needed time off, Plaintiff continued to work. (*Id.* (citing AR at 1275-76; Testimony)); and

• At the January 9, 2024, disability hearing, Plaintiff testified her depression lessened and anxiety improved after switching her medication to Lamotrigine. (*Id.* at 939 (citing Testimony)). She was also leaving the house, spending time with family, and began working full time as a middle school math teacher. (*Id.*)

Based on the foregoing, ALJ Momcilovic concluded Plaintiff had: (1) moderate limitation in understanding, remembering, or applying information, (AR at 935-36 (citing AR at 206, 361, 689, 769, 776, 781, 786, 791, 1281, 1287, 1296, 1302)); (2) moderate limitation for interacting with others, (*id.* at 936 (citing AR at 312, 315, 361, 689, 919)); (3) moderate limitation in concentrating, persisting, or maintaining pace, (*id.* (citing AR at 314, 612, 689, 2520)); (4) mild limitation for adapting or managing herself, (*id.* (citing AR at AR at 206, 312, 314, 505, 624, 632,

689, 701, 769, 1296). Finally, the ALJ concluded there was insufficient evidence to establish Plaintiff had a mental impairment that satisfied "paragraph C" criteria. (*Id.* at 937). Further, Plaintiff's objective medical evidence established that Plaintiff's three inpatient mental health treatments—of which only one was during the relevant period—"occurred during a period of medication nonadherence." (*Id.* (citing AR at 417, 512, 634)). In less than two weeks, Plaintiff "returned to baseline of a relatively normal mental status with medication stabilization."(*Id.* at 937). Plaintiff also lived by herself in an RV on her parents' property until she purchased a home. (*Id.*) Plaintiff's boyfriend eventually moved into her house with her. (*Id.*)

The ALJ also addressed various stressors that Plaintiff identified to medical providers that contributed to her mental impairments: (1) her disability case and appeal, (AR at 942 (citing AR at 648) (September 2020)); (2) her divorce proceedings, including spousal and child support and commingled assets, (AR at 942 (citing AR at 648 (September 2020), 653 (November 2020), 657 (January 2021); AR at 945 (citing AR at 1287) (December 2022)); (3) her new boyfriend and their finances, (AR at 944 (citing *generally* 918-26), 945 (citing AR at 1287) (December 2022); (4) additional duties added to her position as a lead teacher, (AR at 945 (citing AR at 1275 (September 2023), 1279 (July 2023)); and (5) caring for her six-year old grandson who had behavioral issues, (AR at 944 (citing AR at 2059 (October 2021)).

ALJ Momcilovic further determined Plaintiff's daily activities were inconsistent with debilitating limitations that would preclude the RFC. Plaintiff testified and reported to medical providers that she managed money and medication, she was able to babysit her grandkids and drive them to and from school, she prepared meals and cleaned her trailer. (AR at 955 (citing Plaintiff's May 28, 2020, and December 21, 2020, Adult Function Reports); AR at 943, 956 (citing AR at 727, 729) (May 2021)). Plaintiff also stated she went to the grocery store, read, and ran errands as

needed. (*Id.*) Plaintiff further reported that she interacted with family, friends, and neighbors. (*Id.*). During the relevant period, Plaintiff also spent a week in Las Vegas at a Cutco convention, (AR at 941, 956 (citing AR at 632) (January 2020)); visited her father's ranch with her sons, (AR at 942, 956 (citing AR at 640) (June 2020)); spent at least two weeks in Kansas helping her daughter with her three kids, (AR at 944, 956 (citing AR at 2059) (October 2021)); traveled to Jamaica and Costa Rica, (AR at 944, 956 (citing AR at 1296) (June 2022); AR at 956 (citing AR at 1420) (September 2023)); worked at her sister's bar at least once (AR at 956 (citing AR at 781) (April 2021)); went to the motocross track on the weekends to support her son, (AR at 942, 956 (citing AR at 653) (November 2020)). Plaintiff also started going out with her boyfriend and son to restaurants, barbeques, and attended her son's graduation ceremony and party. (AR at 943, 956 (citing AR at 726, 728) (May 2021); AR at 944, 956 (citing AR at 926) (September 16, 2021, two days after her initial disability hearing)). Plaintiff also purchased a new home "and was having fun purchasing items" for the house. (AR at 943, 956 (citing AR at 722) (June 2021)).

Next, the ALJ evaluated six medical source statements for their persuasiveness. He found unpersuasive the opinion of psychological consultative examiner, James Schutte, Ph.D. (AR at 945-48) (citing AR at 686-90)). He also found Abercrombie's May 2020, statement unpersuasive as it was not supported by her own findings and it was inconsistent with the clinical findings in the medical record. (*Id.* at 948-49). Likewise, he concluded Abercrombie's January 2021, statement was unpersuasive as it contained conclusory statements instead of functional limitations and was neither supported by nor consistent with her own findings and the longitudinal medical record. (*Id.* at 949-50). ALJ Momcilovic also determined NP Wood's January 2021 medical source statement was not persuasive as her opinion was "neither supported by her clinical findings or consistent with the reports of function in counseling records." (*Id.* at 950-51). The ALJ further found Diana

Windsor's, MSW, LCSW, CCTP, CATP, November 23, 2022, medical opinion not persuasive because it was not supported by her own clinical findings and was inconsistent with the longitudinal medical record. (*Id.* at 951-53).

He further found NP Wood's November 23, 2022, medical statement to be unpersuasive. (*Id.* at 953-54). The ALJ concluded NP Wood's opinions were inconsistent with the medical records for several reasons. First, NP Woods opined Plaintiff was unable to meet competitive standards for remembering work-like procedures, maintaining attention for two hours, performing at a consistent pace, and using public transportation during a time period when Plaintiff returned to work full-time as a teacher. (*Id.* at 953). Second, NP Wood stated Plaintiff would be off task both ten and twenty percent, absent from work three or four days per month, and would need to "take off work if she had an episode." (AR at 953 (citing AR at 2554)). NP Wood, however, did not define an "episode" nor did she elaborate on the number of days Plaintiff missed for the 2022-2023 school years to support her conclusion that Plaintiff would indeed miss work. (*Id.*) Third, NP Wood claimed Plaintiff's "limitations existed and persisted to the *same degree* since December 18, 2019," however, this statement was inconsistent with Plaintiff's testimony—and the extensive record—that showed fluctuation in her symptoms, her daily activities that contradicted her limitations, and Plaintiff returned to full time work. (*Id.*) Fourth, Plaintiff generally exhibited normal examination findings at her medical appointments, was not in counseling at least at one point during the relevant period, and Plaintiff denied bipolar symptoms. (*Id.*) Fifth, Plaintiff's daily activities demonstrated her ability to manage and participate in activities without serious interference from her mental symptoms, including driving and working while on medication. (*Id.*) Sixth, when Plaintiff reported heightened anxiety it was generally tied to her relationships and finances. (*Id.* at 953-54). Seventh, NP Wood's opinions were also not consistent with the

longitudinal medical record. (*Id.* at 954). For instance, Abercrombie noted Plaintiff's MSEs were unremarkable even during periods of Plaintiff reporting increased anxiety and/or depression. (*Id.*) Moreover, Plaintiff's daily activities during the relevant period disputed the degree of limitations opined by NP Wood. (*Id.*)

Finally, ALJ Momcilovic found the State agency's medical consultants' opinions, at the initial and reconsideration levels, persuasive. (*Id.* at 954). The ALJ explained that the State agency's medical consultants only concluded Plaintiff had severe mental impairments. (*Id.*). Those opinions were supported by the medical consultants' narrative explanations, and were consistent with the objective medical records and Plaintiff's self-reported functional abilities. (*Id.*)

At step four, the ALJ found Plaintiff was unable to perform her past relevant work as a salesperson (china and silverware) and an elementary/middle school teacher. (*Id.* at 956). Nevertheless, taking into consideration Plaintiff's age (42), education (at least high school), prior work experience, and RFC, Plaintiff could work as a marker or cleaner/housekeeper. (*Id.* at 957). ALJ Momcilovic thus concluded Plaintiff was not disabled at any time from December 18, 2019, through the date of the decision. (*Id.*)

## IV.   DISCUSSION

Plaintiff asserts ALJ Momcilovic committed both legal and factual errors when he found unpersuasive the medical opinion of NP Wood. (Doc. 11) at 2, 11-18. Specifically, Plaintiff contends the ALJ's assessment is deficient for three reasons: (1) the ALJ failed to assess the variable nature of bipolar disorder when, (i) he did not assess NP Wood's handwritten statement next to the check-box form and the entirety of the check-box form, (ii) he improperly selected benign mental findings and failed to consider that her mental impairments waxed and waned; (2) the ALJ failed to develop the record because he (i) inappropriately concluded Plaintiff failed to

proffer evidence supporting the number of absences she acquired in the 2022-2023 school years; and (ii) did not inquire as to NP Wood's definition of the phrase "strict low-key schedule"; and (3) the ALJ inappropriately selected daily activities in support of his own conclusion and diminishes the episodic and variable nature of bipolar disorder. Defendant disputes each of these arguments. *See generally* doc. 13. For the reasons explained below, the Court agrees with Defendant.

Because Plaintiff applied for disability benefits after March 27, 2017, the ALJ was required to evaluate NP Wood's medical opinions under the revised regulation found in 20 C.F.R. § 404.1520c. *See Zhu v. Comm'r, SSA*, No. 20-3180, 2021 WL 2794533 at *4 & n.8 (10th Cir. July 6, 2021). Under 20 CFR § 404.1520c, the persuasiveness of a medical source's opinions depends on five factors: "supportability; consistency; relationship with the claimant; specialization; and other factors, such as 'a medical source's familiarity with the other evidence in a claim.'" *Zhu v. Comm'r, SSA*, No. 20-3180, 2021 WL 2794533, at *5 (10th Cir. 2021) (quoting, *inter alia*, 20 C.F.R. § 404.1520c(c)). Supportability and consistency are the only two factors that the ALJ must explain when assessing the persuasiveness of a medical source's opinions. *See* 20 C.F.R. § 404.1520c(b)(2). The factor of supportability "examines how closely connected a medical opinion is to the evidence and the medical source's explanations: 'The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions will be.'" *Zhu*, 2021 WL 2794533, at *5 (internal brackets and ellipsis omitted) (quoting, *inter alia*, 20 C.F.R. § 404.1520c(c)(1)). Consistency, by contrast, "compares a medical opinion to the evidence: 'The more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) will be.'" *Id.* (internal ellipsis omitted) (quoting, *inter alia*, 20 C.F.R. § 404.1520c(c)(2)).

When explaining his findings regarding the supportability and consistency of a medical source's opinions under § 404.1520c(b), the ALJ must provide enough detail such that the Court "can follow the adjudicator's reasoning" and determine whether the "correct legal standards have been applied." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012); *see also Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004) (finding that an ALJ's reasons for rejecting a medical opinion must be "sufficiently specific to enable [the] court to meaningfully review his findings") (internal quotations omitted). An ALJ may not make "global references to the record" without citing additional evidence. *Dwyer v. Saul*, Civ. No. 20-80 JFR, 2021 WL 1574965, at *11 (D.N.M. Apr. 22, 2021) (holding that the ALJ's "broad" statement that the medical opinion "[was] not consistent with the record" was insufficient). Indeed, although ALJs need not cite to specific record evidence, they must "note[] the evidence upon which [they] relied, and that evidence [must be] specific, and verifiably supported by the record evidence." *See Victoria Jean G. v. Kijakazi*, CIVIL ACTION No. 20-4053-JWL, 2021 WL 4168124, at *5 (D. Kan. Sept. 14, 2021). Nonetheless, courts have affirmed "minimalist" supportability and consistency findings as long as the ALJ points to some evidence in such a way that the Court can follow the ALJ's reasoning. *Frank v. Kijakazi*, Civil Action No. 20-cv-00691-NYW, 2021 WL 3796620, at *6 (D. Colo. Aug. 25, 2021); *see also Cox v. Saul*, CIV 19-1117 KBM, 2020 WL 6701426, at *6 (D.N.M. Sep. 9, 2020) (holding that the ALJ sufficiently explained his supportability and consistency findings with the statement: "the moderate to marked limitations that [the doctor] opined overstate the severity of impairment to [Plaintiff's] abilities, are unsupported by the objective medical evidence and . . . [are] inconsistent with the evidence from all medical/nonmedical sources") (internal quotations omitted).

**A.    The ALJ Did Not Err In Finding NP Wood's Opinion Unpersuasive and**

**Substantial Evidence Supports the ALJ's Assessment that Plaintiff's Mental Symptoms Fluctuated**

Plaintiff argues that the ALJ made an improper factual determination about the supportability and consistency of NP Wood's medical opinions. In particular, Plaintiff contends that, contrary to the ALJ's assertions, NP Wood's medical opinions were supported by her internal objective findings, her treatment notes, and were consistent with Abercrombie's objective findings in the record. (Doc. 11) at 15-17. Plaintiff further asserts that the ALJ's failure to consider this evidence precluded him from recognizing the fluctuating symptoms associated with Plaintiff's bipolar disorder. (*Id.*) The Court disagrees.

Here, the ALJ explained how he considered the supportability and consistency factors for NP Wood's medical opinions. ALJ Momcilovic first concluded that NP Wood's "extreme limitations," such as the amount of time off work for an undefined "episode" and "strict low-key schedule," were inconsistent with her own clinical findings. (AR at 953). For instance, Plaintiff's MSEs were repeatedly unremarkable, with normal affect, speech, and Plaintiff was calm and cooperative during her examinations. (AR at 942-43 (citing AR at 769, 775, 781, 786, 790); AR at 944 (citing AR at 1290-91 , 1293, 1296, 2060); AR at 945 (citing 1281, 1283, 1285)). Plaintiff also demonstrated fully oriented cognition with intact memory and though processes, judgment, insight, and she was alert. (AR at 942-43 (citing AR at 786, 790)). Plaintiff repeatedly denied anxiety and depression symptoms as well as paranoia, hallucinations, delusions, and/or bipolar symptoms. (AR at 943 (citing AR at 781); AR at 944 (citing AR at 1293); AR at 945 (citing AR at 1281)). However, when Plaintiff reported heightened anxiety and depression in April 2022, her MSE was normal. (AR at 944 (citing AR at 1299-1300)). Plaintiff stopped attending counseling for a short period. (*Id.* (citing AR at 1293)). Throughout her treatment, Plaintiff endorsed

depression and anxiety symptoms at low severity levels. (AR at 942-45 (citing AR at 790, 769, 1281, 2059)). Plaintiff also repeatedly stated she was doing well while on medication. (AR at 943-44 (citing AR at 781, 775, 1296)).

Plaintiff concedes normal examination findings are in the record. However, she argues the ALJ's supportability analysis erroneously fails to consider the "episodic" nature of Plaintiff's symptoms that were detailed in NP Wood's handwritten notes. (Doc. 11) at 12-14. Moreover, the ALJ failed to address all of NP Wood's opinions articulated on the check-box form pertaining to Plaintiff's limitations. (*Id.*) Although ALJ Momcilovic did not explicitly reference the aforementioned medical evidence, there is substantial evidence in the record that he considered NP Wood's findings over the duration of Plaintiff's treatment. *See* (AR at 942-54 (citing AR at 695, 769, 775-76, 781, 786, 790-91; 1268, 1275-76, 1279, 1281, 1283, 1285, 1287, 1290-91, 1293-94, 1296, 1299-1300, 2059-60). The ALJ's reference to the foregoing evidence gives credence to the contention that he considered Plaintiff's symptoms "at different levels" during the relevant period. There is also substantial evidence in the record to establish that ALJ Momcilovic considered NP Wood's check-box "seriously limited, but not precluded" opinions. Specifically, the aforementioned objective medical evidence, Plaintiff's subjective statements, and daily activities show her ability to recall information, attention span, interaction with the public, get along with co-workers, etc. *See* (AR at 942-54 (citing to medical records, Plaintiff's testimony, and function reports)). Ultimately, the ALJ found NP Wood's opinions were unsupported by her objective MSEs, treatment notes, and medical findings.

The same follows for ALJ Momcilovic's consistency analysis. He discussed that Plaintiff, at times, had a depressed and anxious mood. (AR at 938-40 (citing Testimony (AR 39-60, 968-1000)); AR at 940 (citing AR at 312, 316-17, 356-57, 362); AR at 942-45 (citing AR at 769, 790,

1275-76, 1281, 2059; Testimony); *see also* (AR at 1299). However, the ALJ cited extensive records that showed normal MSEs. (*See generally* AR at 942-54 (citing to medical records)). Plaintiff is correct to note that the ALJ must consider all the evidence—not just the objective mental examinations—when assessing the consistency of a medical source's opinions with the record. See 20 C.F.R. §§ 404.1520c, 416.920c (requiring the ALJ to assess the consistency of a source's medical opinions "with the evidence from other medical sources and nonmedical sources"); 20 C.F.R. § 404.1545(a)(3) (requiring the ALJ to base the RFC "on all of the relevant medical and other evidence"). However, there is no indication that the ALJ did not do so here. He thoroughly addressed Plaintiff's medical records with other treating and non-treating providers, (AR at 942-54 (citing to medical records)), as well as Plaintiff's reports of anxiety and depression and that her anxiety and depression scores fluctuated, (AR at 938-40 (citing Testimony (AR 39-60, 968-1000)); AR at 940 (citing AR at 312, 316-17, 356-57, 362); AR at 942-45 (citing AR at 769, 790, 1275-76, 1281, 2059; Testimony); *see also* (AR at 1299). ALJ Momcilovic's discussion of how he considered the supportability and consistency factors for NP Wood's opinions provides the Court with sufficient basis to determine the appropriate legal principles have been followed.

This Court cannot reweigh the evidence, which is what Plaintiff is asking the Court to do. The ALJ applied the correct legal standard here and made a decision that was supported by substantial evidence in the record. The mere fact that there is evidence which might support a contrary conclusion is not sufficient to show error on the part of ALJ Momcilovic. *Scrivner v. Berryhill*, 323 F.R.D. 663, 665–66 (D.N.M. January 11, 2018); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) ("We consider whether the ALJ followed the 'specific rules of law that must be followed in weighing particular types of evidence in disability cases,' "but we will not reweigh the evidence or substitute our judgment for the Commissioner's.")

As for possible fluctuation in Plaintiff's symptoms, it "is correct that mental impairments often wax and wane and that a claimant need not show that the impairment is continuously disabling in order to succeed in [her] claim of disability." *See Roberts-Jewett v. Astrue*, Civil Action No. 11-1066-JWL, 2012 U.S. Dist. LEXIS 55478, 2012 WL 1388733, at *4 (D. Kan. Apr. 20, 2012) (citing *Freemyer v. Sullivan*, 723 F. Supp. 1417, 1420 (D. Kan. 1989)). The ALJ, though, did not ignore evidence of oscillating severity in Plaintiff's symptoms. As noted earlier, he acknowledged Plaintiff had abnormal mental findings—throughout her medical history—before he concluded that the record as a whole contained generally normal examinations. This thorough analysis discharged ALJ Momcilovic's obligation to account for swings in the severity of Plaintiff's impairments. *See K.S. v. Saul*, Case No. 20-1253-JWB, 2021 U.S. Dist. LEXIS 106959, 2021 WL 2338250, at *5 (D. Kan. June 8, 2021).

### B.    The ALJ Properly Developed the Record

Next, Plaintiff maintains that the ALJ failed to properly develop the record. (Doc. 11) at 14-15. In so arguing, Plaintiff contends she provided the ALJ with ample records pertaining to her absences from the 2022-2023 school years. And, if the ALJ found those records to be incomplete, he could have inquired about the frequency of her episodes and absences at the January 9, 2024, disability hearing or afterwards. (Doc. 11) at 14. Notably, Plaintiff generally cites Exhibits 1F through 35F as the records in support of her contention, approximately 2,623 pages. (*Id.*) Plaintiff's only pinpoint citation is to her counsel's questioning at the January 9, 2024, hearing, which is as follows:

> Q: Okay. And since we're talking about this now, tell us about the family, the FMLA that you were approved for. How is that supposed to work?
>
> A: Since I have used up all my leave, in order to continue leave without pay, I provided them all of my medical paperwork for all the absences that I have had, and I was approved for intermittent leave, which means that I am allowed to take

> those days to continue to take those days through the duration of my contract [*sic*].
> It does secure my job until the end of that contract. I don't know what happened
> afterwards, but at least through May, I will have a job with the okay to continue to
> take these as needed for recoup for appointments or things like that.

(Doc. 11) at 14 (citing AR at 991). Nor does Plaintiff attempt to define NP Wood's phrase, "strict

low-key schedule," which Momcilovic noted was vague and made without any clarification. *See*

(Doc. 11) at 14-15; *see also* (AR at 953 (citing AR at 2555)).

   Contrary to Plaintiff's present position, though, her attorney at the administrative hearing

gave no indication that further development of the record was necessary. *See* (AR at 999)

(Plaintiff's attorney indicating the record was complete). In counseled cases, the Tenth Circuit has

held that an ALJ should "ordinarily be entitled to rely on the claimant's counsel to structure and

present claimant's case in a way that the claimant's claims are adequately explored, and the ALJ

may ordinarily require counsel to identify the issue or issues requiring further development."

*Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004). Under the circumstances of this case,

the Commissioner insists that the ALJ reasonably found that he had sufficient information, both to

evaluate whether Plaintiff had a mentally determinable impairment under the requisite criteria and

ultimately to make a determination on her claim. (Doc. 13) at 14-15. The Court agrees. The Court

will not ordinarily remand for failure to develop when a claimant's attorney affirmatively indicates

that the record is complete and does not suggest that any medical records or information is missing

from the record. *See, e.g.*, *Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008).

   Even putting aside her attorney's assurance that the record was complete, Plaintiff's

failure-to-develop claim remains without merit. Critically, Plaintiff makes no effort to demonstrate

how the missing absences would have supported additional functional limitations. In fact, she fails

to offer any detail as to what would be found in the missing records—*i.e.*, whether she was

currently working in an accommodated schedule at the January 2024 hearing or whether she started

to or had used her recently approved intermittent FMLA leave. Plaintiff has not alleged any harmful error with respect to the ALJ's development of the record. The Court will not reverse on this ground.

### C.    The ALJ's Reliance on Daily Activities was Proper

The Court further concludes that the ALJ did not err in assessing Plaintiff's limitations and credibility based on her daily activities. An ALJ may properly rely on contradictory activities of daily living and other objective indicia such as recommendations for exercise and relief from medication. See *Tarpley v. Colvin*, 601 F. App'x 641, 644 (10th Cir. 2015); *Romero v. Colvin*, 563 F. App'x 618, 621 (10th Cir. 2014).

In this case, ALJ Momcilovic examined Plaintiff's activities of daily living and concluded Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR at 941). The ALJ observed, for example, that Plaintiff's Adult Function Reports detailed numerous daily activities. For instance, Plaintiff could pay her bills, manage her medications, prepare three meals a day, cook for her children, clean her trailer, and run errands such as going to the grocery store. (AR at 955 (citing Plaintiff's May 28, 2020, and December 21, 2020, Adult Function Reports); AR at 943, 956 (citing AR at 727, 729)). Despite not getting out much, Plaintiff babysat her grandkids several hours a day, drove her grandkids to and from school, interacted with family, friends, and neighbors. (AR at 955 (citing Plaintiff's May 28, 2020, and December 21, 2020, Adult Function Reports); AR at 943, 956 (citing AR at 727, 729)). Plaintiff also began venturing out of the house with her son and boyfriend to restaurants, barbeques, and motorcross events. (AR at 942-44, 956 (citing AR at 653, 726, 728, 926)). Plaintiff also traveled several times in the continental United States as well as internationally. (AR at 941-42, 956 (citing AR at 632, 640)); (AR at 944,

956 (citing AR at 1296, 1420, 2059)). The ALJ also noted that Plaintiff reported to multiple medical providers that she was doing well and recognized she was stable when she adhered to her medication regiment. (AR at 941-43 (citing AR at 588, 634, 646-47, 723). ALJ Momcilovic was permitted to draw reasonable inferences about the circumstances of Plaintiff's daily activities. *Harlan v. Apfel*, 2000 U.S. App. LEXIS 33459, \*4 (10th Cir. 2000). An ALJ may reasonably deduce the level of attention, concentration, and focus necessary to pay bills, drive a car, participate in social conversations, conduct some household chores, babysit multiple grandkids, and travel. Based on the foregoing, the Court concludes the ALJ did not err in assessing Plaintiff's daily activities to determine her ability to work.

## V.    CONCLUSION

Plaintiff has failed to convince this Court that the Commissioner's final decision to deny her Social Security benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 401-34, 1381-83f, was tainted by legal error or unsupported by substantial evidence. Wherefore, **IT IS THEREFORE ORDERED** that Plaintiff's Brief and Memorandum of Law in Support of Reversing or Remanding an Administrative Agency Decision, (Doc. 11), is **DENIED** and the decision of the Commissioner is **AFFIRMED**. A final judgment under Rule 58 will be entered concurrently with this Memorandum Opinion and Order.

**KEVIN R. SWEAZEA**
**UNITED STATES MAGISTRATE JUDGE**
**Presiding by Consent**